**UNITED STATES of America,**
**Plaintiff,**

v.

**Glen William ZIEMER, Defendant.**

**No. 60–CR–57.**

United States District Court
E. D. Wisconsin.

Aug. 31, 1960.

Edward G. Minor, U. S. Atty., by Matthew M. Corry, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

William Bachman, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Defendant has moved for the return of seized property and suppression of evidence.

In the evening on March 3, 1960, two City of Milwaukee acting detectives were investigating the alleged theft of some clothing. The alleged theft had been reported by a former roommate of the defendant. The police officers, Walter Edgar Franklin and James Marx, called at the apartment of the defendant to question him in regard thereto.

There is a conflict between the testimony of the police officers and the testimony of the defendant as to what occurred. Franklin testified that he asked defendant "if in his presence we could enter his room to look for this clothing named in the complaint. He stated yes, we could." (T. p. 72)* Marx testified that when first asked if the officers could come into defendant's room, defendant replied, "I would rather not." (T. p. 104) They continued talking in the hall.

---

* Reference to all transcript pages is to the pages in the transcript in Case No. 60– CR–29 which is in evidence in this case by stipulation of the parties.

On further cross-examination by defendant's counsel Marx stated that the defendant objected to the officers coming into the room in the first instance "To talk, yes." (T. p. 105) Marx further stated later in his testimony that the officers asked defendant again whether they could come in and look, "at which time he gave us the permission to go into his room and search it if we wanted to." (T. p. 106) Defendant admitted the officers into the room.

Although the officers were called by defendant's counsel, defendant's counsel was permitted to cross-examine them. This testimony was taken in connection with the motion to suppress the evidence, which motion was made in Case No. 60–CR–29 which involves the same parties and the same alleged offense. At the close of that testimony, the court pointed out that there was a direct conflict between the testimony of the officers and that of the defendant; that there was testimony by the witness, Betty Koepsel, that defendant had asked her to testify to things that she did not hear or that were not true; also that the credibility of the defendant was reduced by the prior conviction on the felony charge. In that case the court denied the motion to suppress. The court was impressed with the witnesses Franklin and Marx and felt that they were being frank, honest, and fair in their testimony.

Defendant now asks the court to assume that the police officers carried guns. Plaintiff concedes that that was probably true. There is not the slightest bit of testimony that the officers exhibited any guns or threatened or bullied the defendant. Taking the testimony of the officers as true, which this court does, the officers did nothing to intimidate or threaten defendant. His consent was voluntarily given. He voluntarily agreed to the search. Defendant did not testify to any threats, to any intimidation, to any force, or to any coercion. He did not testify that he was frightened although the court can readily believe that under all the circumstances he could well have been nervous about the situation. Defendant

takes the position that the mere fact that they were police officers in and of itself shows that defendant was coerced or frightened. If this position is sound, then no police officer could ever search the premises with permission of the owner. The authorities all hold that one's constitutional rights may be waived, including the right to be free from unreasonable searches, so long as that consent is freely given.

Counsel for defendant places reliance upon testimony of officer Franklin that when defendant was told that the police could not take defendant in the police car to relatives of the man who complained about the stolen clothing because it was against department rules and regulations, "Then Mr. Ziemer became very nervous." (T. p. 72) At that time Franklin asked defendant if the officers could enter his room and look for the clothing, and defendant stated "yes." It is argued that this shows that defendant was coerced or frightened by the fact that they were police officers.

The testimony shows that the counterfeiting equipment and the materials found were in a closet adjoining the room and that there was no light in the closet except for a dark red light such as is used for developing pictures. The defendant himself testified that he knew "that in the adjoining room there there was material there of a calamitous nature, you might call it." (T. p. 10)

The record shows that the defendant had previously been convicted of counterfeiting. Under these circumstances, when the defendant was being questioned with reference to stolen clothing and the door to his room was open, one can readily appreciate that being nervous would be quite natural. His being nervous in this situation does not prove intimidation or that his consent was other than voluntary.

Believing the testimony of the police officers and disbelieving that of the defendant, the court finds that the defendant voluntarily and knowingly consented to the search for the clothing and that

while the officers were there with permission for that purpose, they saw the counterfeiting material and thereafter placed defendant under arrest. Defendant's motion for the return of seized property and suppression of evidence is hereby denied.